IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONNIE LOUIS BEARD, Sr. | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-4129 |
| | : | |
| CORIZON HEALTH, INC. et al. | : | |

O'NEILL, J.                                                                                         January 24, 2017

### MEMORANDUM

While plaintiff was imprisoned in the Philadelphia prison system, with which defendant Corizon Health, Inc. contracts to provide health care, he underwent a biopsy of his prostate for diagnostic purposes. He then waited three-and-a-half months before defendants scheduled him a follow-up visit with the surgeon who had performed the biopsy. Plaintiff brings a claim under 42 U.S.C. § 1983 against Corizon and Elmeadas Frias, a health care administrator employed by Corizon, for violation of his Eighth Amendment right to medical care, Dkt. No. 21 (First Am. Compl.), and defendants move for summary judgment, Dkt. No 30. Plaintiff, now proceeding pro se, has not filed a response.[1] I will grant defendants' unopposed motion because, on the record before me, there is no dispute about any material fact relating to plaintiff's medical treatment and no reasonable jury could find that it amounted to a violation of plaintiff's Eighth Amendment rights.

---

[1] On August 5, 2016, defendants filed their motion for summary judgment. Dkt. No. 30. On September 26, I ordered plaintiff file a response to defendants' motion for summary judgment by October 26. Dkt. No. 33. On September 28, defendant filed its exhibits under seal, as they contained plaintiff's medical records. Dkt. No. 34. On October 31, plaintiff opposed defendant's request to file his records under seal, Dkt. No. 35, and I therefore ordered the exhibits be unsealed. Dkt. No. 36. I again ordered plaintiff file a response to defendant's motion for summary judgment on or before November 14 and notified him that defendants' motion would be considered even in the absence of a response. Dkt. No. 36. As of the date of this filing, I have not received a response from plaintiff. Therefore, I consider defendant's motion without the benefit of a response.

**BACKGROUND**

While incarcerated in the Philadelphia prison system from April 5, 2012 to July 18, 2013, plaintiff had a series of health issues related to his prostate. Dkt. No. 30, Ex. B (Beard Dep.) at 7:3–6 (giving the dates of his incarceration in Philadelphia). After several in-prison doctors' visits and an appointment with a urology specialist outside the prison, plaintiff was scheduled to receive a biopsy on his prostate with Dr. Walter Gerber of the Urological Consultants of Southeastern Pennsylvania at Einstein Hospital.[2] On March 12, 2013, Dr. Gerber performed a surgical biopsy. Dkt. No. 30, Ex. C, 50–56 (Prison Medical Records March 12, 2013); Beard Dep. at 81:15–18.

---

[2] Plaintiff received the following medical care related to his prostate condition between April 2012 and March 2013: plaintiff was seen by a nurse for complaints of back pain on April 16, 2012 and advised her that he had a history of prostate problems. Beard Dep. at 65:1–9; Dkt. No. 30, Ex. C, 23 (Prison Medical Charts, April 16, 2012). On October 23, 2012, plaintiff was seen by a nurse for complaints of intermittent urination. Beard Dep. at 67:21–68:5; Dkt. No. 30, Ex. C, 28 (Prison Medical Charts, Oct. 23, 2012). Two days later, he saw a physician's assistant, who noted a history of "lump in prostate." Dkt. No. 30, Ex. C, 28 (Prison Medical Charts, Oct. 25, 2012); Beard Dep. at 68:6–69:2. At two appointments in early November 2012, doctors ordered and then performed an ultrasound of his prostate and bladder. Dkt. No. 30, Ex. C, 29–32 (Prison Medical Charts, Nov. 1–6, 2012); Beard Dep. at 69:3–71:13. Dr. Evangelista told plaintiff that his urination problems were likely caused by a prostate condition. Beard Dep. at 70:4–9. Plaintiff's doctors ordered him antibiotics and Cardura (doxazosin), a medication used to improve urination in men with enlarged prostate. Beard Dep. 70:23–71:13; Dkt. No. 30, Ex. C, 32 (Prison Medical Chart November 5 or 6, 2012) (handwritten date unclear).

Plaintiff saw a physician's assistant on December 20, 2012. Beard Dep. at 72:24–73:6; Dkt. No. 30, Ex. C, 35 (Prison Medical Charts, Dec. 20, 2012). On January 9, plaintiff's lab tests were reviewed and a physician noted that he may need a biopsy of his prostate. Dkt. No. 30, Ex. C (Prison Medical Charts, Jan. 9, 2013) 35. On January 22, 2013, he met with Dr. Blatt, who submitted a form to request an out-of-prison specialist appointment for plaintiff with a urologist. Beard Dep. at 75:22–76:3; Dkt. No. 30, Ex. C, 36–38 (Prison Medical Charts, Jan. 22, 2013). Corizon approved the request the next day and plaintiff was seen by Dr. Gerber on February 14, 2013. Beard Dep. at 77:4–11; Dkt. No. 30, Ex. C, 39–40 (Prison Medical Charts, Feb. 14, 2013). Dr. Gerber recommended a cystoscopy and a prostate biopsy. Id. at 41. Plaintiff was scheduled for pre-admission testing on February 21. Id. at 42. On February 26 and March 6, he had chest x-rays and on March 4, Dr. Blatt reviewed plaintiffs' lab results. Dkt. No. 30, Ex. C (Prison Medical Charts), 42 (Mar. 4, 2013), 43 (Feb. 28, 2013), 46 (Mar. 6, 2013); Beard Dep. at 77:20–23, 80:3–16.

After the biopsy, plaintiff attempted to learn the results of the test. Beard Dep. at 54:21–18; 46:18–47:3. He requested the results on April 23, 2013 by submitting a sick call request. Beard Dep. at 55:2–18; Dkt. No. 30, Ex. E (Sick Call Request, April 23, 2013). He saw a nurse two days later and again inquired about the biopsy result. Dkt. No. 30, Ex. C, 66 (Prison Medical Record April 25, 2013). He was told that his biopsy showed that his tissue was noncancerous. Id.; Beard Dep. at 55:19–20.

On June 3, 2013, plaintiff received a letter from Urological Consultants of Southeastern Pennsylvania which stated that the organization had been trying to get in touch with him by phone. Beard Dep. at 49:4–10; Dkt. No. 30, Ex. F (Letter from Urologic Consultants to Beard, May 24, 2013). The letter—a form letter with blanks for plaintiff's name and the date filled in by hand—explains that "[i]t is important to be followed after a surgical procedure to prevent any complications. Please call the office as soon as possible to schedule a follow up appointment." Id. On June 4 and 6, plaintiff managed to confront defendant Elmeada Frias, a health services administrator, and show her the letter. Dkt. No. 30, Ex. G, 1 (Phila. Prison System Inmate Grievance Form, June 20, 2013). He asked her why he had not been sent back to the hospital for his follow-up visit. Id. She told him she would get back to him. Id. On June 20, having still not received notice that a follow-up appointment had been scheduled, plaintiff filed an inmate grievance describing his encounters with Frias and requesting to be seen by Dr. Gerber. Id.; Beard Dep. at 14:9–20; 48:15–49:9.

On July 2, Frias met with plaintiff to discuss his grievance. Dkt. No. 30, Ex. G, 2 (Phila. Prison System Finding of the Inmate Grievance, July 2, 2013); Beard Dep. at 14:20–15:19. She told him she already had a copy of Dr. Gerber's letter describing his need for a follow-up appointment. Beard Dep. at 12:6–13. She claimed to have spoken with plaintiff's doctor and

3

told plaintiff that it might be difficult to schedule his follow-up visit because he was soon to return to state jail. Phila. Prison System Finding of the Inmate Grievance, July 2, 2013; Beard Dep. at 14:20–15:1. The same day, Dr. Blatt completed a referral form to request plaintiff's follow-up appointment with Dr. Gerber. Dkt. No. 30, Ex. C, 84 (Utilization Management Referral Review Form, July 2, 2013).

The appointment was scheduled for July 22, 2013. Dkt. No. 30, Ex. C, 85 (Utilization Management Referral Form with Note, July 22, 2013). This was four days after plaintiff's scheduled transfer out of the Philadelphia prison system. Beard Dep. at 100:6–11. Plaintiff was not told about this appointment. Beard Dep. 97:20–98:2. After leaving the Philadelphia prison system—and therefore leaving Corizon's care—plaintiff was transferred to several different state and county jails and prisons. Beard Dep. at 32:16–20, 100:12–15, 106:21–107:10, 108:10–19. On August 16, 2013, he met with a nurse and explained that he had had prostate surgery and had not had a follow-up appointment. Dkt. No. 30, Ex. H, 2 (Pa. Prison System Medical Records, August 16, 2013). He ultimately underwent prostate surgery on October 20, 2014. Beard Dep. at 109:8–110:6; Dkt. No. 30, Ex. H, (Pa. Prison System Medical Records) 24–26.

## STANDARD OF REVIEW

Although defendants' motion is unopposed, I must review the merits of its motion to determine whether the defendants are entitled to summary judgment. Fed. R. Civ. P. Rule 56(c); Blasi v. Attorney Gen., 30 F. Supp. 2d 481, 484 (M.D. Pa. 1998) ("[T]he district court may not grant a motion for summary judgment . . . solely because the motion is unopposed; such motions are subject to review for merit.").

The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Plaintiff brings this case under 42 U.S.C. § 1983, alleging violation of his Eighth Amendment right to medical care.  U.S. Const. amend. VIII, see Estelle v. Gamble, 429 U.S. 97, 102–03 (1976) (establishing that the state's failure to provide medical care can violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment).  Although plaintiff has not submitted a response to defendant's motion for summary judgment, his complaint suggests the contours of his arguments against defendants: he alleges defendants "unreasonably delayed providing [him] with medical care," Am. Compl. ¶ 12, which caused him "unnecessary pain and needless suffering," Am. Compl. ¶ 13.  He contends defendants ignored

his doctors' request to see him for medically necessary follow-up care after his prostate surgery and generally failed to treat his prostate condition. Am. Compl. ¶¶ 14–36, 40–44.

I will grant defendants' motion for summary judgment because, first, plaintiff presents no evidence that Corizon had a policy or custom that violated his rights as required to establish liability under Natale v. Camden County Correctional Facility, 318 F.3d 575, 583–84 (3d Cir. 2003), and, second, the undisputed record evidence before me shows that Frias's conduct did not amount to deliberate indifference to plaintiff's medical needs as required under Estelle v. Gamble, 429 U.S. at 104.

## I.     Defendant Corizon

Defendant Corizon operates under the direct control and supervision of the City of Philadelphia. Lee v. Abellos, No. 13-0486, 2014 WL 7271363, at *1 (E.D. Pa. Dec. 19, 2014). Because Corizon is a private corporation performing a municipal function, it cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978); Lee, No. 13-0486, 2014 WL 7271363, at *1 (E.D. Pa. Dec. 19, 2014).[3] Rather, Corizon can only be held liable if plaintiff can provide evidence that it had a relevant policy or custom that caused the constitutional violation he alleges. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Natale, 318 F.3d at 583–84.

---

[3]     See also Taylor v. Plousis, 101 F. Supp. 2d 255, 263 (D.N.J. 2000) (explaining that "[n]either the Supreme Court nor the Third Circuit has yet determined whether a private corporation performing a municipal function is subject to the holding in Monell" but that "the majority of courts to have considered the issue have determined that such a corporation may not be held vicariously liable under § 1983"). But see id. at n.4 (explaining the arguments against this determination, including that "the policy considerations which prompted the Supreme Court to reject qualified immunity for private prison guards are the same considerations which suggest that private corporations providing public services, such as prison medical care, should not be immune from respondeat superior liability under § 1983").

A policy exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Brown, 520 U.S. at 404.  Acts of a government employee or other state actor may be the result of a policy or custom of the entity for which the employee works, thereby rendering the entity liable under 42 U.S.C. § 1983, in three situations:  1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act is an implementation of that policy; 2) when the policymaker itself violates federal law, or 3) when the policymaker fails to act in the face of an obvious need to prevent its agents from violating constitutional rights, such that the policymaker can reasonably be said to have been deliberately indifferent to such violations.  Natale, 318 F.3d at 584.

Plaintiff has not offered any evidence that Corizon has a custom or policy that caused his rights to be violated.  The only evidence before me describes the isolated treatment of plaintiff in particular.  It does not show that Corizon promulgated a policy, that Corizon itself violated federal law, or that Corizon failed to act in the face of an obvious need to prevent its agents from violating inmates' constitutional rights.  Therefore, I will grant defendants' motion for summary judgment with respect to plaintiff's claim against Corizon.

## II.   Defendant Frias

The question before me is whether defendant Frias's handling of plaintiff's health care—specifically the delay between the date plaintiff requested that Frias schedule him a follow-up appointment and the date she did so—amounts to deliberate indifference to plaintiff's serious need for medical treatment.  Because there is no evidence showing that Frias acted with

7

knowledge that plaintiff faced a substantial risk of serious harm from the delay, I hold that it does not.

"Negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Rather, to defeat a motion for summary judgment, plaintiff must present enough evidence to support the inference that defendants are deliberately indifferent, or were "knowingly and unreasonably disregarding an objectively intolerable risk of harm." Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). "Deliberate indifference," therefore, requires "obduracy and wantonness." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994). Although delay or denial of medical treatment can amount to deliberate indifference where "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment," such delay or denial must "expose[] the inmate to undue suffering or the threat of tangible residual injury." Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 346–47 (3d Cir. 1987). The delayed treatment must be "immediately necessary to treat" the plaintiff's condition. Montgomery v. Aparatis Dist. Co., 607 F. App'x 184, 188 (3d Cir. 2015) citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Although defendant Frias's delay of one month in scheduling plaintiff's follow-up visit is not exemplary, it does not amount to deliberate indifference to a serious need for medical care. Plaintiff does not present evidence showing that he faced a substantial risk of serious harm from not receiving a follow-up appointment. Farmer, 511 U.S. at 842. The only evidence in the

record that supports the claim that he needed a follow-up appointment is the form letter he received from the Urologic Consultants stating that follow-up "is important . . . after a surgical procedure to prevent any complications." Dkt. No. 30, Ex. F. The record does not show that plaintiff's follow-up visit was immediately necessary, that he was experiencing any unexpected side-effects as a result of his biopsy surgery, or that he was otherwise exposed to "undue suffering or the threat of tangible residual injury" as a result of Frias's delay. Monmouth Cnty. Corr. Inst'l Inmates, 834 F.2d at 346–47.

Plaintiff testifies that he would not have needed his 2014 prostate surgery had defendants properly treated him while he was in the Philadelphia prison system, including giving him medications that would have reduced his prostate problems. Beard Dep. 11:18–25. But this testimony is not sufficient to defeat defendant's motion for summary judgment for two reasons: first, plaintiff does not claim that defendant Frias's failure to schedule a prompt follow-up appointment—rather than the behavior of some other actor not named as a defendant—caused his later need for surgery, and second, there is no medical evidence in the record supporting plaintiff's conjecture about the effects of his treatment or any delay. Therefore, I will grant defendants' motion for summary judgment with respect to plaintiff's claims against Frias.

An appropriate Order follows.